RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

RICKY H. KRANTZ,

        *Petitioner-Appellant,*

     *v.*

         No. 08-6489

CHERRY LINDAMOOD, Warden,

        *Respondent-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 05-00481—William J. Haynes, Jr., District Judge.

Argued: January 21, 2010

Decided and Filed: February 17, 2010

Before: SILER, ROGERS, and McKEAGUE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Caryll S. Alpert, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Brent C. Cherry, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Caryll S. Alpert, Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Brent C. Cherry, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

—————————————

## OPINION

—————————————

ROGERS, Circuit Judge. Petitioner Ricky Krantz was involved in a dispute about an arm-wrestling match late on Super Bowl Sunday, 1993, at the Next Door Tavern in Nashville, Tennessee. Angered, he threatened that he would return to the bar with a gun and kill either the others involved in the dispute or everyone. Despite being involved in a subsequent violent car crash, Krantz returned less than forty-five minutes later and fired a

1

shotgun into the tavern twice, killing Dan Newland and injuring Dean Harris. Krantz was convicted by a Tennessee jury of felony murder, where the underlying felony was attempted first degree murder. In a petition for a writ of habeas corpus, Krantz contends that the evidence was insufficient to support this conviction because he claims the state did not prove that he had the intent to kill any specific person. Because the intent to kill a specific victim is not a required element of attempted first degree murder under Tennessee law, Krantz is not entitled to habeas relief.

In the evening of Super Bowl Sunday, January 31, 1993, petitioner Ricky Krantz was shooting pool with Jack Speakman at the Next Door Tavern in Nashville, Tennessee.[1] Krantz and Speakman had known each other for several years. At around 10:30 p.m., Krantz stated that he wanted to arm wrestle. Speakman indicated that he was not interested, but he introduced his friend Kevin Williams to Krantz as an opponent. Krantz and Williams were also acquainted, and they had arm wrestled each other on previous occasions. The two men agreed to arm wrestle, and Speakman and at least one other person bet money on the first match. Williams prevailed, but after Krantz protested that there had been cheating, the two men agreed to a rematch. As they were preparing for the rematch, Krantz grabbed Williams's hand and slammed it to the table, took the money that had been bet on the match, and attempted to leave. Speakman then grabbed Krantz, threw him to the floor, and retrieved the money.

Krantz then exited the tavern and climbed into his truck. At Krantz's trial, tavern employee Martha Bryant testified that, as he exited the tavern, Krantz stated that he was going to get a gun and return to kill everyone. Keith Walker testified that he spoke with Krantz after Krantz had exited the tavern, and that Krantz had repeatedly stated his intention to retrieve a gun and return to kill Speakman and Williams. Speakman testified that once Krantz had climbed into his truck, Krantz had yelled to Speakman, "I'll be back to kill you, you S.O.B."

---

[1]We generally rely upon the facts found by the Court of Criminal Appeals of Tennessee on direct appeal. *See* 28 U.S.C. § 2254(e)(1); *State v. Krantz*, No. 01C01-9406-CR-00207, 1998 WL 3621, at *1-8 (Tenn. Crim. App. Jan. 7, 1998).

Krantz then left the tavern in his truck in the direction of his home. At some point after this, Krantz's truck ran off the road, collided with a barn, and then turned end-over-end before settling in the yard of a residence. The crash occurred approximately seven-tenths of a mile away from the tavern. At approximately 11:15 p.m.—less than 45 minutes after he had left the tavern—Krantz somehow returned to the tavern, having retrieved his shotgun. Krantz either fired a shot through the front door of the tavern or opened the door and then fired. This first shot struck and killed Dan Newland. Either because Krantz opened the door or because the shot forced the front door open, witnesses saw Krantz standing in the doorway with a shotgun. Williams then forced the door closed. Krantz reloaded his single-shot shotgun and then either fired it through the door or fired the gun while the barrel was protruding into the tavern. This second shot injured, but did not kill, Dean Harris. Keith Walker exited the tavern and confronted Krantz near an outside corner of the tavern. Krantz pointed the shotgun at Walker, but when Krantz was briefly distracted by someone else, Walker was able to disarm Krantz. By this time, Krantz had loaded the shotgun a third time. Paramedics responding to a report of injuries at the tavern found Krantz staggering down the highway a short time later, with cuts and blood on his face.

Krantz was first indicted on April 27, 1993, for the first degree murder of Newland and for the attempted first degree murder and aggravated assault of Harris. A hung jury led to a mistrial in Krantz's first trial. Krantz was then reindicted on December 7, 1993, for the first degree murder of Newland, the felony murder of Newland with an underlying felony of assault or attempted assault with intent to commit murder, and the attempted first degree murder of Harris. Krantz filed a motion to dismiss, and after a hearing, the trial court held that assault with intent to commit murder is not a proper underlying felony for felony murder, and dismissed the felony murder count. *See* Tenn. Code Ann. § 39-13-202(a)(2). Krantz was finally reindicted on January 14, 1994, for first degree premeditated and deliberate murder, felony murder with an underlying felony of attempted first degree murder, attempted first degree premeditated and deliberate murder, and aggravated assault. At trial, the jury found Krantz guilty of felony murder and aggravated assault.

On direct appeal, Krantz argued unsuccessfully that the evidence was insufficient to support the conviction for felony murder. *See Krantz*, 1998 WL 3621, at *1, *9. The state appellate court concluded that the evidence presented at trial established "beyond a reasonable doubt that [Krantz] recklessly killed Dan Newland during the attempted murder of Williams." *Id.* at *9. After Krantz appealed, the Supreme Court of Tennessee remanded the case on an unrelated issue and the Court of Criminal Appeals again upheld the conviction. *See State v. Krantz*, No. M1999-02437-CCA-RM-CD, 2000 WL 59915 (Tenn. Crim. App. Jan. 25, 2000). The Supreme Court of Tennessee then denied review. *See id.* On state collateral review, Krantz argued unsuccessfully that he was denied effective assistance of counsel. *See Krantz v. State*, No. M2002-02978-CCA-R3-PC, 2004 WL 367723 (Tenn. Crim. App. Feb. 27, 2004). Krantz then filed an unsuccessful *pro se* petition for state habeas corpus, arguing that his felony murder conviction was void because he was acquitted of the underlying felony and because the trial judge failed to sign the court minutes. *See Krantz v. State*, No. M2003-02819-CCA-R3HC, 2004 WL 2599453 (Tenn. Crim. App. Nov. 12, 2004).

Krantz filed the instant petition for habeas corpus *pro se* on June 13, 2005. The district court granted the petition in part (i.e., invalidating the aggravated assault conviction with respect to Harris), but denied Krantz's claim that the evidence was insufficient to support his felony murder conviction. The warden does not appeal the partial grant of Krantz's petition, and the district court granted a certificate of appealability only as to Krantz's sufficiency-of-the-evidence claim. Now represented by counsel, Krantz appeals, arguing that the evidence regarding felony murder was insufficient because the state failed to prove that he intended to kill a specific victim. The sole legal support relied upon by Krantz for a specific-victim-intent requirement is *Millen v. State*, 988 S.W.2d 164 (Tenn. 1999).

The evidence in this case was sufficient because, to support a conviction of attempted murder, Tennessee courts have held that "the relevant statutes defining first degree murder and the 'intentional' element of that crime do not require that a defendant's conscious objective be to kill a specific victim;" instead, "what is required

is that the defendant have the conscious objective to kill 'a person.'" *State v. Faulkner*, No. E2000-00309-CCA-R3-CD, 2001 WL 378540, at *8 (Tenn. Crim. App. Apr. 17, 2001) (quoting *Millen*, 988 S.W.2d at 168). In *Faulkner*, a woman convinced three men to kill her husband's ex-wife, promising that they could afterwards steal the ex-wife's personal property. *Id.* at *1. One night, the three men fired numerous bullets into the ex-wife's house; the defendant Faulkner, one of the three men, admitted in a pretrial statement that their plan "was to kill everyone in the house and steal the stuff in it." *Id.* at *2, *9. Four people were in the home that night, and two were injured by the gunfire. *Id.* at *2. Faulkner was convicted of four counts of attempted first degree murder. *Id.* On appeal, Faulkner argued that there was insufficient evidence that he attempted to kill anyone other than the ex-wife because he did not know anyone else was inside the house that evening. *Id.* at *8. The court held that, because the evidence demonstrated "that the defendant had the premeditated intent to kill everyone in the [house]," it did not matter "that he was unaware of the identity of each individual or even the exact number of individuals present." *Id.* at *9. For this holding, the court relied on the conclusion from *Millen* that the state need only prove that a defendant had the conscious objective to kill "a person," and the *Faulkner* court extended this holding to apply also where the charge is attempted first degree murder rather than completed first degree murder. *See id.* at *8 (quoting *Millen*, 988 S.W.2d at 168). The court reached a similar conclusion in at least two other cases. *Jackson v. State*, No. W2006-00606-CCA-R3-HC, 2007 WL 273649, at *4 (Tenn. Crim. App. Jan. 31, 2007); *State v. Pulliam*, No. M2001-00417-CCA-R3-CD, 2002 WL 122928, at * 5 (Tenn. Crim. App. Jan. 23, 2002).

These cases comport with the most natural reading of *Millen*. In *Millen*, the defendant "intentionally fired several gunshots at a specific person but inadvertently killed a random victim near the scene" and was thereafter convicted of first degree murder. 988 S.W.2d at 164. The Supreme Court of Tennessee first expressed its "view" that "prosecuting these 'unintended victim' cases as felony murder would appear to be the most appropriate application of the statute." *Id.* at 167. The court then explained that if a case is prosecuted under this theory, and "[i]f the prosecution establishes that a defendant attempts to commit the premeditated and deliberate first degree murder of

a specific victim but instead kills an unintended victim, the defendant may be guilty of first degree felony murder." *Id.* at 167-68. This quote is the sole legal basis for Krantz's argument. The court's statement does not appear to be a definition of the scope of attempted murder as the underlying felony for felony murder, but instead is only an example of how felony murder can be used to prosecute "unintended victim" murder cases without resort to the legal fiction of "transferred intent." *See id.* This reasoning, however, was an insufficient basis on which to affirm the conviction in *Millen* because the defendant had been convicted of first degree murder rather than felony murder with an underlying felony of attempted first degree murder. So the court went on to construe Tennessee's first degree murder statute.

The court first noted that, under Tennessee law, "a person . . . acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire *to engage in the conduct or cause the result*." *Id.* at 168 (quoting Tenn. Code Ann. § 39-11-302(a)). The court concluded that "[a] plain reading of this statute as applied to first degree murder indicates that a defendant's conscious objective need not be to kill a specific victim." *Id.* There is no reason to infer a "specific victim" requirement for attempted first degree murder when none exists for completed first degree murder. Thus, a natural implication of the holding in *Millen* is that it is possible to commit attempted murder without a conscious objective to kill a specific victim. For instance, it would be attempted first degree murder for one, with premeditation and deliberation, to fire a gun into a crowd with the conscious objective to kill a person, even if one did not have a specific victim in mind.

Krantz's counsel at oral argument appeared to accept that a conviction for attempted murder does not require that the victim be specifically intended, as in *Faulkner*, and that a conviction for direct murder does not require that the victim be specifically intended, as in *Millen*. Nevertheless, Krantz's counsel argued that in the particular situation where attempted murder is the underlying crime in a felony murder case, the victim of the attempt must be specifically intended by the defendant. Such a

strange reading of the Tennessee statute is not supported by the single example given by the *Millen* court for purposes of comparison.

Because the state needed to prove only that Krantz intentionally attempted to kill someone—and not necessarily anyone specifically—the evidence was plainly sufficient. The evidence produced at trial revealed that Krantz, after threatening to get a gun and return to kill either Williams, Speakman, or everyone, went to his house, retrieved his shotgun, and upon returning to the tavern, fired the shotgun into the tavern. Indeed, Krantz conceded in his reply brief that the evidence was sufficient to prove that Krantz intended to kill someone.

We therefore **AFFIRM** the district court's denial of Krantz's petition for a writ of habeas corpus.